# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **PEGGY M. McKNIGHT,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:11CV00032 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **RIDGECREST HEALTH GROUP, LLC,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Carl E. McAfee, Carl E. McAfee, P.C., Norton, Virginia, for Plaintiff; Joan C. McKenna and James K. Cowan, Jr., LeClairRyan, a Professional Corporation, Richmond and Blacksburg, Virginia, for Defendant.*

In this employment discrimination case, the plaintiff contends that she was terminated because of her age in violation of the Age Discrimination in Employment Act ("ADEA"). Because I find that the plaintiff has failed to create a genuine issue of material fact as to her employer's alleged intentional discrimination, I will grant the defendant employer's motion for summary judgment.

I

The following facts taken from the summary judgment record are either undisputed or, where disputed, are stated in the light most favorable to the plaintiff.[1]

Plaintiff Peggy McKnight was born in 1965, and is a Licensed Practical Nurse. In 1991, McKnight began working at a nursing home called Ridgecrest Manor, which is currently owned and operated by the defendant, Ridgecrest Health Group, LLC ("Ridgecrest").

Ridgecrest employs more than 100 people. Ridgecrest currently employs at least three nurses who are over the age of 70 and at least two additional nurses who are over the age of 60. (Rusek Decl. ¶ 14, Ex. G.) The average age of Ridgecrest's workforce is approximately 44 years. Ridgecrest has a policy that prohibits employment discrimination based on age. (Employee Handbook 14.)

In 2009, following Ridgecrest's purchase of the nursing home, McKnight was promoted from the position of Treatment Nurse to Head of B-Unit. Michele Bruno (now Rusek) was McKnight's supervisor at that time. In December 2010, Patsy Brooks was promoted to Director of Nursing and became McKnight's

---

[1] In support of its Motion for Summary Judgment, Ridgecrest has submitted the plaintiff's deposition, as well as declarations of pertinent witnesses and various forms and exhibits, including the Ridgecrest Employee Handbook and a list of Ridgecrest employees and their years of birth. In turn, the plaintiff has submitted her own declaration and the declaration of a former Ridgecrest employee.

supervisor.  Both Bruno and Brooks indicated that McKnight had a difficult personality and was often disrespectful to other employees.  McKnight herself admitted in her deposition that she has a fairly strong personality and is outspoken.  According to Bruno, McKnight spoke harshly to residents of the nursing home as well as staff members, and Bruno had to counsel McKnight on her behavior.  (Rusek Decl. ¶¶ 5-6.)  According to Brooks, McKnight bullied other employees and caused a number of them to threaten to quit their jobs.  (Brooks Decl. ¶¶ 4-8.)  One nurse actually did resign, but returned to Ridgecrest following McKnight's termination.  (*Id.* at ¶ 7.)

> Ridgecrest's Employee Handbook provides:
>
> Each resident has the right to be free from verbal, sexual, physical and mental abuse, corporal punishment and involuntary seclusion.  Each resident must be treated with consideration and respect in full recognition of his or her dignity.
>
> We expect each of our employees to uphold and protect the rights of our residents.  Failure to observe these rights will result in corrective action, up to and including termination.

(Employee Handbook 1.)  The handbook further states:

> Ridgecrest is committed to providing a work environment that is free of harassment and other unlawful discrimination.  Therefore, we maintain very strict policies covering ethics, equal employment opportunity, behavioral standards, harassment, dating relationships, employment of relatives, the Integrity Agreement, confidential information and the use of the computer, Internet and voicemail.

(*Id.* at 13.) The handbook requires employees to "[t]reat others fairly and considerately" (*id.*) and expressly prohibits harassment, including any "conduct that creates an unprofessional, intimidating and/or hostile environment or the impression of such an environment" (*id.* at 14). The Employee Handbook sets forth a progressive discipline policy but also notes that steps in the progression may be skipped if warranted by the circumstances. McKnight admits that she received and was familiar with the Employee Handbook. She further admits that Ridgecrest generally followed the progressive discipline policy. (McKnight Dep. 33, 45, 136-37.)

Ridgecrest documented four infractions that ultimately led to McKnight's termination. The first incident involved an altercation over difficulty in obtaining tube feeding materials that McKnight needed to feed a particular resident. McKnight allegedly yelled and swore at Dietary Director Marcia Hornsby, who was either McKnight's peer or her superior. Hornsby investigated McKnight's claims and concluded that they were based on faulty information. Hornsby filed an internal complaint regarding McKnight's conduct, which she perceived to be an unprofessional, profanity-laced verbal assault. (Hornsby Decl. ¶¶ 4-7.) Brooks witnessed McKnight's confrontation of Hornsby and corroborated Hornsby's account. (Brooks Decl. ¶ 6.) McKnight admits that she used "pretty harsh language," including the "f word," when speaking to Hornsby, and she knew that

Hornsby had complained about the incident. (McKnight Dep. 54, 62, 64-65.) Bruno investigated the incident and, finding that McKnight's behavior was unprofessional and inappropriate, demoted McKnight from Head of B-Unit to Clinical Supervisor. (Rusek Decl. ¶ 8.)

The second infraction documented by Ridgecrest involved a complaint by the daughter of one of the nursing home residents. On March 15, 2011, the daughter, Betty Kerns, complained to Brooks that McKnight had been rude to her when she had visited her father the night before. (Brooks Decl. ¶ 9, Attach. B.) When Kerns had requested information about her father, McKnight had allegedly chastised her for not talking to other members of her family. Kerns explained to Brooks that her family was estranged and that she was entitled to request information about her father. Kerns threatened to remove her father from the nursing home if McKnight's behavior was not addressed. (*Id.*) McKnight received a written counseling sheet for this incident. (McKnight Dep. 71.)

McKnight's third infraction arose from complaints by several Certified Nursing Assistants ("CNAs") on March 16, 2011. The CNAs had worked an unusually long shift and then stepped outside for a 15-minute break. According to the CNAs, McKnight had paged them and then unreasonably screamed at them for leaving the floor while certain administrative tasks remained incomplete. (Brooks Decl. ¶ 8.) McKnight concedes that the incident occurred but denies screaming at

the CNAs. (McKnight Dep. 78-83.) The CNAs who complained to Brooks stated that if Ridgecrest did not address McKnight's conduct, they would resign from their jobs. (Brooks Decl. ¶ 8.) Bruno again learned of the incident and issued a written reprimand, though McKnight denies receiving the written reprimand prior to her termination. (McKnight Dep. 79.)

McKnight's fourth and final infraction, also on March 16, 2011, centered on a complaint by Dorothy McNew, the daughter of a resident. McNew conveyed to Brooks that she and her mother were upset because McKnight had ordered several CNAs to take McNew's mother for a shower, despite the fact that McNew had been visiting her mother three times a week to bathe her. (Brooks Decl. ¶ 9, Attach. B.) McNew's mother had explained to the CNAs that her daughter gives her baths, but McKnight had allegedly dismissed the mother's comments and said that it had been too long since the mother had showered. The mother had been particularly upset and scared because she suffered from dementia, which caused her to fear spraying water. McKnight claims that she had a conversation with the mother about state and federal bathing regulations and that the mother had eventually acquiesced to taking a shower on that occasion, but had then requested that she only receive baths from her daughter in the future. (McKnight Dep. 85-87.) Brooks and Bruno concluded that this incident constituted a fourth strike under Ridgecrest's progressive discipline policy and recommended to the facility's

owners that McKnight be terminated.  Specifically, Brooks and Bruno allegedly believed that keeping McKnight on staff would be detrimental to Ridgecrest's business and may cause Ridgecrest to lose employees and residents.  (Rusek Decl. ¶¶ 13-14; Brooks Decl. ¶ 10.)  McKnight was 46 years old at the time of her termination on May 17, 2011.

In late 2010, several months before McKnight's termination, Ridgecrest had hired Jessica Vanzant, a registered nurse certified in wound care therapy. Ridgecrest asserts that its hiring of Vanzant was based entirely on her unique credentials and market concerns.  (Rusek Decl. ¶ 9.)  In her Amended Complaint, McKnight alleges that Vanzant was hired to take over McKnight's job.  In her deposition, however, McKnight conceded that she does not believe that Vanzant was hired to replace her.  (McKnight Dep. 102.)  Additionally, Ridgecrest had hired Amber Allen in late 2010 to address infection control and staff development. McKnight alleges that Allen was hired to replace her.  She concedes, however, that Allen was hired months before she was terminated and that Allen was hired to perform different tasks than those performed by her.  (*Id.* at 95-96.)

Following her separation from the company, McKnight filed suit against Ridgecrest,[2] claiming that her termination violated the ADEA.  Following the close

---

[2] McKnight's original complaint was against Ridgecrest Manor, Inc.  She later learned that Ridgecrest Manor, Inc. was not her employer and was allowed to amend her

of discovery in the case, Ridgecrest has moved for summary judgment, arguing that McKnight has not met her initial burden of producing evidence sufficient to state a prima facie claim for age discrimination. The motion has been fully briefed, and I have heard oral argument from the parties. The motion is now ripe for disposition. For the reasons that follow, I agree with Ridgecrest.

II

An award of summary judgment is appropriate where there is no genuine dispute as to any material fact such that one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must assess the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party. *Nguyen v. CNA Corp.,* 44 F.3d 234, 237 (4th Cir. 1995).

Rule 56 mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party "need not produce evidence, but simply can argue that there is an absence of evidence by

---

suit to name Ridgecrest Health Group, LLC. *See McKnight v. Ridgecrest Manor, Inc.*, No. 2:11CV00032, 2012 WL 2236659 (W.D. Va. June 14, 2012).

which the nonmovant can prove his case." *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393 (4th Cir. 1994) (internal quotation marks and citation omitted). Summary judgment is not "a disfavored procedural shortcut," but is an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex,* 477 U.S. at 327.

Because McKnight offers no direct evidence of discrimination, her age discrimination claim is analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). This framework requires the plaintiff to establish a prima facie case of discrimination by a preponderance of the evidence. *See Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53 (1981).

A prima facie case of age discrimination under the ADEA consists of four elements to be shown by the plaintiff: "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).

If a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment

action.  *Id.*  Assuming the employer meets its burden of production, the burden shifts back to the plaintiff to prove that the employer's stated reasons "'were not its true reasons, but were a pretext for discrimination.'"  *Id.*  (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000)).  At this point, the burden to demonstrate pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination."  *Burdine,* 450 U.S. at 256.  As the Supreme Court has counseled,

> [w]hether judgment as a matter of law is appropriate in any particular case will depend on a number of factors.  Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Reeves,* 530 U.S. at 148–49.

The question before me is whether McKnight has presented evidence to raise a genuine issue of material fact that she was the victim of intentional discrimination rather than performance-based termination.  Because McKnight has failed to meet this burden, I must grant summary judgment in favor of Ridgecrest.

McKnight has presented sufficient evidence to satisfy the first two elements of her prima facie case.  It is undisputed that she is a member of a protected class, as she was over the age of 40 on the date of her termination.  *See* 29 U.S.C.A. § 631(a) (West 2008) (limiting the ADEA's protections to persons who are at least

40 years of age). There is also no dispute that McKnight suffered an adverse employment action when she was terminated.

McKnight cannot, however, satisfy the third element of a prima facie case of age discrimination: she cannot establish that she was performing her job duties at a level that met her employer's legitimate expectations at the time of her termination. There is no genuine dispute of fact regarding McKnight's inappropriate workplace behavior. For instance, McKnight admits to using profanity in conversations with her peers and superiors. Though she disputes the validity of some of the complaints, she admits that she was aware that other staff members and family members of residents lodged complaints with Ridgecrest regarding her conduct. The complaints clearly demonstrate violations of the harassment policies contained in Ridgecrest's Employee Handbook.

Other than her own opinions, the only evidence McKnight has produced to rebut the complaints is a declaration of a former coworker, Angie Bradnan, claiming that McKnight was a good and loyal employee. Neither McKnight's own assessment of her performance nor the assessment of her coworker are particularly relevant. The key inquiry is whether, in the eyes of the decision-makers who terminated her, McKnight was performing in line with Ridgecrest's reasonable expectations. *See, e.g.*, *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (plaintiff's self-assessment and the opinions of plaintiff's coworkers are not

relevant); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959, 960 (4th Cir. 1996) (plaintiff's own "conclusory statements about her qualifications" are insufficient to establish a prima facie case of discrimination); *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (plaintiff's own opinions and conclusory assertions that facts are in dispute are not enough to survive summary judgment). Because McKnight cannot establish that she was meeting her employer's legitimate expectations, she cannot make out a prima facie case of age discrimination. Therefore, summary judgment in favor of Ridgecrest is warranted.

Even assuming arguendo that McKnight could establish a prima facie case of discrimination, she has not offered any evidence whatsoever that would show that Ridgecrest's proffered reason for firing her was mere pretext and that the real reason for her termination was her age. McKnight admitted in her deposition that she has nothing more than a subjective belief that she was terminated because of her age. The undisputed evidence shows that Ridgecrest employs nurses who are much older than McKnight. Indeed, McKnight was approximately the average age of the Ridgecrest workforce when she was terminated. The record is devoid of any evidence that Ridgecrest fired McKnight because of her age. "There is no automatic presumption that every termination of an employee between the age of 40 and 70] results in a violation of the [ADEA]." *Goldberg*, 836 F.2d at 849 (internal quotation marks and citation omitted).

III

Because McKnight has not created a genuine issue of material fact as to whether she was terminated because of her age, Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) (ECF No. 20) is GRANTED.

It is so **ORDERED**.

A separate judgment will be entered herewith.

    ENTER:   January 16, 2013

    /s/  James P. Jones
    United States District Judge